ALLEN v. BRYSON.

67 591
98 157
101 606,

67 591
118 83

1. **Practice in Supreme Court:** EFFECT OF MERE DENIAL OF APPELLANT'S ABSTACT, NO TRANSCRIPT BEING FILED. Appellant's abstract in this case stated that it contained " all the evidence introduced, and all offers of evidence made, on the trial, together with all the objections made and exceptions taken by counsel, and all rulings of the court upon said trial, and the entire record in said cause," and the abstract on its face appeared to be what it claimed to be. Appellee filed an abstract stating that appellant's abstract was not correct; that it did not contain all the evidence in a condensed or other form; that it did not contain over one-third of the evidence taken on the trial, and that what it did contain was disconnected from the order in which it was introduced. But no transcript was filed from which this court could determine the questions thus raised. *Held* that under such circumstances appellant's abstract must be taken as true, and the cause reversed for errors appearing therein.

2. **Contract in Writing:** BILL OF SALE: NOT VARIED BY CONTEMPORANEOUS PAROL AGREEMENT: EXAMPLE. Where a defense was founded upon a bill of sale absolute upon its face, a reply which set up that there was a contemporaneous oral understanding that the transaction was to be regarded as a mere bailment of the property, for a temporary purpose, was properly held bad on demurrer. See opinion for cases followed and distinguished.

3. **Gift of Services:** SUBSEQUENT AGREEMENT TO PAY: NO CONSIDERATION. Where one person renders services for another gratuitously, and with no expectation of being paid therefor, no obligation is incurred by

the recipient which will support a subsequent promise to pay for the same.

4. **Settlement:** PRESUMED FROM EXECUTION OF MORTGAGE. The execution of a mortgage to secure an indebtedness, like the execution of a promissory note, (*Grimmell v. Warner*, 21 Iowa, 11,) raises a presumption that all matters between the parties up to that date have been settled.

5. **Evidence:** VALUE OF ATTORNEY'S SERVICES: HYPOTHETICAL QUESTIONS. Hypothetical questions to practicing attorneys as witnesses, to show the value of certain legal services, approved.

6. **Practice on Appeal:** EVIDENCE NOT OBJECTED TO BELOW. Objections to evidence cannot be raised for the first time on appeal to this court.

*Appeal from Hardin District Court.*

SATURDAY, DECEMBER 12.

BOTH parties are attorneys at law, and this action was brought to recover for professional services performed by the plaintiff for the defendant, and for personal property sold. Several defenses were pleaded, which are sufficiently referred to in the opinion. Trial by jury. Verdict and judgment for the plaintiff, and defendant appeals.

*S. M. Weaver*, for appellant.

*W. V. Allen* and *C. E. Albrook*, for appellee.

SEEVERS, J.—I. Preliminary to a consideration of the errors assigned, an objection to the abstract made by the appellee must be determined. The abstract states that " all the evidence introduced, and all offers of evidence made, on the trial, together with all the objections made and exceptions taken by counsel, and all rulings of the court upon said trial, and the entire record in said cause, is contained therein." In an abstract filed by appellee it is stated that appellant's abstract is not correct; that the evidence is not all contained in it in a condensed or other form; that it does not contain over

*1. PRACTICE in supreme court: effect of mere denial of appellant's abstract, no transcript being filed.*

one-third of the evidence taken on the trial, and that what it does contain is disconnected from the order in which it was introduced.    We understand that no transcript has been filed, and we are not advised that one was demanded by the appellee. We therefore cannot determine whether the abstract is correct or not.    This being so, the appellee insists that many of the errors assigned cannot be considered.    But we think, under the circumstances above stated, the correctness of the abstract must be assumed.    On its face it appears to be full and complete, and when it so states we think the appellee must, in an abstract filed by him, state wherein the one filed by the appellant is incorrect.    We are aware that this rule in some instances casts upon the appellee a burden not contemplated by the rules of this court, in cases where the appellant purposely or negligently has filed an incorrect abstract.    Experience, however, teaches us that in a majority of cases in this court the correctness of the appellant's abstract is conceded, and in a large proportion of the remaining cases the corrections made therein by the appellee are easily made, and because of abundant caution.    If we should hold that a simple denial of the correctness of the abstract has the effect to require us to examine the transcript, it is obvious that it would be made in every case.    Because of the expense, the preparation and filing of the transcripts should not be encouraged.    While this is so, the appellee, as a matter of right, may demand one, so as to enable him readily to ascertain whether the abstract is correct.    Ordinarily this consideration is sufficiently strong to induce the appellant to prepare an abstract amply sufficient to enable the court to determine the questions discussed by counsel.    Experience also teaches us that, in a majority of cases where the appellee files an abstract, it could have been omitted without detriment.    If the appellant purposely or negligently prepares an insufficient or incorrect abstract, it is the fault of his attorney, and the court, if its attention is called thereto, would endeavor to

inflict such punishment as to prevent a repetition. The objections made to the abstract must be overruled.

II.   The defendant pleaded, as a defense, that in February, 1881, which was after at least some of the services for which the plaintiff seeks to recover had been performed, he and defendant had an accounting and settlement of and concerning all their mutual claims and demands, and it was then found and agreed that plaintiff was indebted to the defendant in the sum of $300; that the defendant at said time loaned the plaintiff $300, and thereupon the plaintiff executed to the defendant a bill of sale, which was made a part of the answer, of certain personal property.   The bill of sale shows that in consideration of $600 the plaintiff sold the defendant the personal property described therein.   The plaintiff, in a reply, pleaded that the sole and only consideration for the so-called bill of sale was the sum of $300 advanced to plaintiff by the defendant; and also that the property therein described " was placed" in the hands of the defendant, or included in the bill of sale, in pursuance of an " oral agreement of the parties thereto, for the sole and only purpose of allowing the defendant to use, manage and control the same during a temporary absence of the plaintiff from the state of Iowa;" and within six weeks thereafter the bill of sale was satisfied, and the property turned over to the plaintiff.   To this reply the defendant demurred, on the ground that it sought to vary the terms of a written contract by parol.   The demurrer was overruled.   It should have been sustained.   The general rule on this subject is well understood, and the only question is whether this case comes within it.   The consideration stated in a written contract, it will be conceded for the purposes of this case, may be impeached and shown by parol to have failed in whole or in part, or to be illegal; but the reply goes much further than this, and states, in effect, that the bill of sale, which is absolute on its face, was in fact a mere bailment of the property for a temporary purpose, and it was pleaded

2. CONTRACT in writing: bill of sale : not varied by contemporaneous parol agreement: example.

Allen v. Bryson.

that the parties had thus limited the effect of the bill of sale by a contemporary oral agreement. To our minds, it is entirely clear that this cannot be done. *Martin v. Hamlin*, 18 Mich., 354; *Adams v. Wilson*, 12 Metc., 138; *Barker v. Buel*, 5 Cush., 519; *Peck v. Armstrong*, 38 Barb., 215; *Forbes v. Waller*, 25 N. Y., 430; *Hurd v. Gallaher*, 14 Iowa, 394; *Isett v. Lucas*, 17 Id., 503; *Gelpcke v. Blake,* 19 Id., 263; *Atherton v. Dearmond*, 33 Id., 353.

The appellee insists that the bill of sale, although absolute on its face, is in fact a mortgage, and that it was given for a temporary purpose which has been subserved, and that these matters can be established by parol. Conceding this may be done, it was not pleaded that the bill of sale was a mortgage. That a writing should be read and construed in the light of the surrounding circumstances is undoubtedly true; (*Singer Sewing Machine Co. v. Holcomb*, 40 Iowa, 33;) but no words having a different meaning from those used can be added thereto. Under the pleadings, the instrument in question must be regarded as a bill of sale. The reply recognizes it to be such, and no words can be interpolated therein which have the effect to change or alter the meaning of the words there used.

III. The defendant pleaded that he and the plaintiff were brothers-in-law, and, in substance, that each of them was engaged in the practice of the law, and had been

3. GIFT of services: subsequent agreement to pay: no consideration.

in the habit of assisting each other as a matter of mutual accommodation, and that "all and each of the professional services for which plaintiff seeks to recover in this action were rendered by him as matters of mutual accommodation and interchange of courtesies, and without charge or expectation of payment or reward, by one as against the other." The court instructed the jury: " If, however, such services were rendered by the plaintiff without expectation of reward, or intention on his part to charge therefor, or by any agreement or understanding that the services were to be gratuitous, the plaintiff cannot recover

unless, after such services were rendered, and in consideration thereof, defendant agreed with or promised plaintiff to pay for the same. In the latter case the valuable character of the service, and the moral obligation to pay for the same, would be a sufficient consideration to support the promise, and enable the plaintiff to recover the reasonable value of such service." We understand this instruction to mean that where one person renders services for another gratuitously, and with no expectation of being paid therefor, a moral obligation is incurred by the latter which will support a subsequent promise to pay. In our opinion, this is not the law. If the services are gratuitous, no obligation, either moral or legal, is incurred by the recipient. No one is bound to pay for that which is a gratuity. No moral obligation is assumed by a person who receives a gift. Suppose the plaintiff had given the defendant a horse, was he morally bound to pay what the horse was reasonably worth? We think not. In such case there never was any liability to pay, and therefore a subsequent promise would be without any consideration to support it. That there are cases which hold that where a liability to pay at one time existed, which, because of the lapse of time, or for other reasons, cannot be enforced, the moral obligation is sufficient to support a subsequent promise, will be conceded.

These cases are distinguishable, because the instructions contemplate a case where an obligation to pay never existed until the promise was made. We do not believe a case can be found where a moral obligation alone has been held to be a sufficient consideration for a subsequent promise. To our minds, however, it is difficult to find a moral obligation to pay anything, in the case contemplated in the instructions, prior to the promise. The following cases support the view above expressed: *Cook v. Bradley*, 7 Conn., 57; *Williams v. Hathaway*, 19 Pick., 387; *Dawson v. Dawson*, 12 Iowa, 512; *McCarty v. Hampton Building Ass'n*, 61 Id., 287.

IV. The defendant asked the court to instruct the jury that, if they found that the plaintiff gave the bill of sale to

**4. SETTLE-MENT: presumed from execution of mortgage.** secure an actual or nominal indebtedness, it will be presumed that a settlement was made between them as of that date, and that all their mutual claims were merged therein. This instruction was asked on the theory claimed by the plaintiff that the bill of sale was a mortgage given to secure the payment of money. The execution of a promissory note raises a presumption that all matters between the parties up to that date have been settled. *Grimmel v. Warner*, 21 Iowa, 11. The execution of a mortgage to secure an indebtedness must, it seems to us, have the same effect. The instruction asked should have been given.

V. The plaintiff introduced as witnesses three practicing attorneys, for the purpose of establishing the value of his services. **5. EVIDENCE: value of attorney's services: hypothetical questions.** Hypothetical questions were asked them, to which the objection was made that they were immaterial and incompetent, and that the witnesses did not show sufficient knowledge of the case to enable them to answer, and that the questions did not conform to the facts proved. We think the evidence was material and competent, and that the witnesses were qualified. In the main, the hypothetical case put in the questions was in accord with the evidence, or with what it tended to prove, unless, possibly, the amount in controversy in some of the cases was not stated with entire accuracy. It is now urged that the witnesses were asked to state the value of the services **6. PRACTICE on appeal: evidence not objected to below.** based upon the fact that the suits were successfully gained or defended, and that one of the actions was stated to be on a new sewing-machine bond, and the number of pages contained in a petition for rehearing made in this court. It is sufficient to say that no such objections as these were made in the district court, and therefore they cannot be urged for the first time here.

It is insisted that the court erred in other respects, but some of the objections are not well taken; others are not of a vital character. We deem it unnecessary to take the time to more particularly refer to them.

REVERSED.