WILLIAM BALLINGER AND A. J. MATHIAS, Executors, v. EDWIN H. CONNABLE, Appellant.

Construction of Will: ADVANCEMENTS. A father, after devising to his three sons equally, the residue of his estate, provided that, for purposes of distribution, the principal of all advancements, without interest, should be considered as part of the residue of the estate, in their hands, respectively, and that, in case of conveyances, the consideration named therein, or, if no consideration was named, the actual cash value at the time of distribution, should be treated as the amount of the advancement. The father, several years prior to his death, purchased for one of his sons a farm, and put him in possession, but retained title thereto in himself. This farm was allotted to the son in possession, by the executors. Held, that the actual cash value of the farm at the time of distribution should include the value of improvements made thereon by the son while in possession, by his own labor and by the expenditure of money charged against him in the settlement as advancements; and that such advancements, made by the conveyance of land, should be diminished, on distribution, by deducting said improvements; it not appearing that the father intended the value of the improvements to be credits against the advancements.

PERSONAL TRANSACTIONS WITH DECEDENT. Under Code, section 3639, prohibiting a party to any proceeding from testifying against an executor as to transactions with a decedent, a son, entitled under his father's will to a farm which his father purchased for him and put him in possession of, without conveying it to him, as part of his distributive share, at its cash valuation, is not a competent witness on trial of exceptions to the report of distribution, to show that he had paid for certain improvements on the land.

*Appeal from Lee District Court.*—HON. A. J. McCRARY,
Judge.

### THURSDAY, DECEMBER 10, 1896.

THIS is an appeal from an order of the district
court approving and confirming a report made by the
plaintiffs as executors of the last will and testament
of A. L. Connable, deceased. The order of the court
was excepted to by Edwin H. Connable, one of the
devisees named in the will, and he appeals.—*Affirmed.*

*James H. Anderson* for appellant.

*James C. Davis* for appellees.

ROTHROCK, C. J.—I. Albert L. Connable, the tes-
tator, died in the month of April, 1894. He left three
sons surviving him, named Albert E. Connable, How-
ard L. Connable, and the appellant, E. H. Connable.
On the thirty-first day of December, 1887, he executed
his will, by which he bequeathed all of his property
to his said sons; each one to have one-third of his
estate after taking an account of certain
advancements made by him to them. That
part of the will necessary to be considered in
determining this appeal is as follows: "I desire that
my estate shall be considered as including all advance-
ments which I have heretofore made to each of my
three sons, for the purpose of division, and that the
principal amount advanced by me to each, without any
interest thereon, be considered as part of my estate
in their hands, respectively, whether the same be
evidenced by note, book account by me, receipt or
conveyance of real estate,—the consideration named
in the conveyance to be considered, for the purpose of
settlement, the amount of the advancement, or, if no

sum is named, the actual cash value of same at the
time of division of the estate shall be considered its
value. I recommend that my executors take into
their counsels, in disposing of my estate, my friend
Charles, P. Birge, who is cognizant of most of my
business, and that they pay him fairly for any service
he may render them in the settlement of the estate.
*  *  *  I desire the contract between myself and
Charles P. Birge be carried out by my executors as
the same is made, and that a reasonable time be
allowed to close up the matters which we have in
connection together. After my debts are paid, and
expenses of settlement of the estate ˙ and any bequest
which I may make by codicil hereto are provided for,
it is my desire that all my estate be divided equally,
share and share alike, between my three sons,
Albert E. Connable, Howard L. Connable, and
Edwin H. Connable. · The property may be divided
in kind, the executors making such division and desig-
nating the part to each, having regard to the prefer-
ences or wishes of each, so as to give to each an equal
share therein, making transfers of personal assets and
conveyances of real estate, for which purpose the title
to the real estate is hereby conferred to them of all the
real estate of which I may die seized, their decision to
be final." It is further provided in the will that the
division of the property shall be made "with as little ⁕
trouble as possible." And, as showing the confidence
reposed in the executors by the testator, a codicil to
the will is in these words:   "I further will and direct
that should my estate be put to any expense by any of
the beneficiaries under this will contesting this will,
that the amount of such expense, including attorney's
fees which are rendered necessary to be paid by my
executors in defending against such contests or suits,
and that any expense which may be made to the estate
in contesting any decision of my executors in making

division of my estate, in their discretion, shall be chargeable alone to the share given by the foregoing will to such devisees or beneficiary, and to such extent the devise to such beneficiary is charged hereby." A second codicil to the will is as follows: "This codicil, made by me, Albert L. Connable, to my last will and testament, as appears by the foregoing pages, for the purpose of adding to the provisions of said will the following bequest: I desire to set apart, in the hands of my said executors, to be charged to the share in the said will given to my son, Edwin H. Connable, fifty (50) shares of the capital stock of the Keokuk Savings Bank (shares $100 each), for the benefit of my said son Edwin H. Connable, and to the heirs of his body. I direct my said executors to collect and pay to my said son during his life-time the dividends on the said stock as same may be declared after my death, same to be paid each time into his own hand, and no alienation or transfer of same shall be valid, whether said transfer, or alienation, be voluntary, or involuntary, on his part. And no anticipation in any manner of the receipt of such dividends shall be valid or binding, but same shall be paid to him personally, notwithstanding any attempt by him to transfer same. Should it be necessary at any time to change the investment, by reason of termination of the bank, or any other reason, my said executors shall re-invest the proceeds of said bank stock in some other interest or income bearing securities, which shall be held by my executors in the same manner as such bank stock during the life of my said son, Edwin H. Connable, remainder over to the heirs of his body, or, in case he shall have none, it shall become part of my estate, to be distributed as aforesaid." The will was duly admitted to probate, and Ballinger and Mathias, who were named therein as executors, proceeded to settle and distribute the estate, as directed by the will. They

took an account of the advancements, and made a division of part of the property, and filed their report of the division made. This report is too voluminous to incorporate into an opinion. It is sufficient to state generally that, in making a division of the estate, the son named Albert E. Connable was found to have had advancements amounting to several thousand dollars, and he had received conveyances of land, including what was denominated as his "Home Farm," of two hundred and sixty-eight acres, in Hancock county, Ill. This farm was appraised by the executors at the sum of seventeen thousand five hundred dollars. Some bank stock was also set apart to him, so that the total value of property set apart to him amounted to twenty-eight thousand six hundred and fifty-six dollars. The advancement and division made to Howard L. Connable amounted to nineteen thousand three hundred and sixteen dollars. The following is a statement of the advancements made to Edwin H. Connable, the appellant herein:

### TO EDWIN H. CONNABLE.

| | | |
|---|---:|---:|
| By book account | $ 7,344 | 96 |
| By notes, Exhibits 9, 10, 11, 12, 13 and 14.. | 3,018 | 02 |
| By fifty shares Keokuk Savings Bank stock. | 7,500 | 00 |
| By E. hf. L. 6, B. 65, Keokuk, Iowa, Exhibit 15 | 9,000 | 00 |
| By 578 acres land in Clark county, Mo., Exhibit 16 | 25,000 | 00 |
| Total advancements to Edwin H. Connable | $51,862 | 98 |

These several sums are named in the report as advancements. They were not all advancements. The report included bank stocks and real estate which the testator had not transferred and conveyed before

his death. The title of the farm of five hundred and seventy-eight acres, awarded to Edwin H. Connable, was held by the testator at the time of his death. It was purchased by the father for his son Edwin some twenty years before the death of the father, and was taken possession of by Edwin soon after the purchase, and he has made that farm his home since it was bought by his father. The will and the evidence show that the testator did not have confidence in the business management of this son. There is evidence in the case which shows that the father would not convey the farm to his son because of his dissipated habits and his mismanagement of the farm.

II. No objection was made to the report of the executors by any of the sons excepting Edwin. His exceptions were to the effect that the Missouri farm was greatly overvalued by the executors, and that he had placed large and valuable improvements upon the land with his labor and with the money which his father advanced to him. He stated his exceptions to the report, so far as it fixed the value of the farm, as follows: "That this respondent, with the money which the executors have charged to him, evidenced by book accounts and notes, and with his own labor and earnings, has placed upon said farm improvements and betterments, by placing same in cultivation, ditching the low lands, so as to drain the same, and erection of fences and growing hedges, by erecting buildings, sheds, barns, waterworks, blacksmith shops, stables, cattle pens, scales, and other inprovements, over and above his work on the stone house and large barn as aforesaid, he has placed improvements upon said land to the value of about eleven thousand dollars ($11,000), as more fully appears by Exhibit A, hereto attached and made part hereof; and that said land, in consequence of said improvements so made and erected thereon by this respondent,

has been enhanced in value from the amount which was paid for the same by Albert L. Connable from the sum of ten thousand six hundred dollars ($10,600), its cost to Albert L. Connable, his father, to the value the same now is, about seventeen thousand five hundred dollars,—there having been no material increase in the value of lands in that neighborhood aside from improvements; and that the difference in its value now, and when the same was purchased by his father, is due solely and alone to his own labor and expenditures which he himself has made from the advances so made to him by Albert L. Connable, and his own labor and results of the use of the farm; that substantially all of the improvements of the farm, outside of the amount paid by his father, for the erection of the house and large barn, were made by him, and it is unfair and improper that he should be charged with the advances so made to him by his father, and then again for the improvement to the land made with the proceeds of such advances." There were a number of witnesses examined as to the value of the farm. The district court determined, in effect, that twenty-five thousand dollars was not an over-valuation. We will not set out the testimony of the witnesses. We have carefully examined that question and we think the valuation was sustained by a fair preponderance of the evidence. It is true that a number of witnesses testified that the farm was not worth twenty-five thousand dollars; but, when cross-examined in reference to sales of other lands in the neighborhood, and when considered in connection with the testimony of other witnesses, to the effect that the valuation of the executors was fair and reasonable, that question ought to be regarded as rightly decided by the district court. It is proper to say, in this connection, that it does not appear that appellant, at any time during

the life of his father, or afterwards, accounted in any way for the use and occupation of the farm; and the executors made no charge against him for rent, except that, in estimating the value of the farm, they took into consideration the rental value from the time of the death of the testator until the filing of the report.

III. The principal question in the case arises upon the right of the appellant to reduce the charge against him for the value of the farm, by deducting therefrom certain labor performed and expenditures made, which he alleges were due to him from his father for improvements upon the farm. There is nothing in this whole record which in the least degree tends to show that the testator supposed that any of his sons had any claim upon him upon any account whatever. On the contrary, it appears that he held promissory notes, given to him by the appellant, in the sum of about three thousand dollars, and his book account against him amounted to more than seven thousand dollars. The will, by its express terms, directs that the estate devised shall be considered as including all of the advancements, without interest thereon, whether evidenced by note, book account, receipt, or conveyance of real estate. It is a most pertinent inquiry, whether the very language of the will does not exclude all claims of the devisees against their father, founded upon improvements made on the farms on which they lived, and of which no account was taken by the father during his life, either by mention in his will, or by credit upon his books of account, or by recognition in any other way. It may be that such a claim might be interposed and sustained if founded upon some legal obligation of the father to pay his sons for improvements on the farms which, it is conceded, he purchased for them.

IV. Appellant, on the hearing of his exceptions to the report of the executors, introduced himself as a witness; and he was asked the following questions by his counsel: "Who made the improvements on the land?" and "State to the court who paid Mr. Lowrie for the wind-mill and water works that he put on the place." Objections to these questions were sustained, on the ground that they tended to prove a personal transaction between the witness and his father. It was then proposed by counsel to prove by the testimony of appellant that he put these improvements on the farm and paid for them himself. An objection to the proposed testimony was sustained. Appellant excepted to these rulings of the court, and it is claimed in argument that they were erroneous. It is provided by section 3639 of the Code that "no party to any action or proceeding * * * shall be examined as a witness in regard to any personal transaction or communication between such witnesses and a person at the commencement of such examination, deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee or guardian of such insane person or lunatic. * * *" The hearing of the exceptions to the report of the executors was not the trial of an issue in an action in which the parties are named as plaintiffs and defendants. It was a proceeding in probate, where the party excepting to the report claimed rights adverse to the other devisees under the will. The statute being applicable to any legal proceeding which is adversary in its character, it applies to such a controversy as this. See *Neas v. Neas,* 61 Iowa, 641 (17 N. W. Rep. 30). It is well to consider what the question propounded to the appellant, and the testimony which it was proposed he should give, tended to prove. His previous examination as a witness, and his exceptions to the report show that he intended to testify that he

made and paid for the improvements for which he claims a credit in making up his share of the estate. As we have said, he is in precisely the same position as though he was making a claim against the estate for the improvements. If he had no legal claim against his father for them, he has no right to maintain them against his estate. The section of the statute above cited has many times been considered by this court. In *Peck v. McKean*, 45 Iowa, 18, it was held that, in a claim for personal services rendered to a person who afterwards died, the claimant was not a competent witness to show the work performed by the plaintiff for the deceased. It was said in that case that "the performance of labor by plaintiff, assent thereto, or other facts which would raise an implied promise of deceased to pay for it, would amount to a personal transaction between them." The cited case has been repeatedly followed and approved by this court. In *Herring v. Herring's Estate*, 94 Iowa, 56 (62 N. W. Rep. 666), it was held that it was error to allow a plaintiff seeking to establish a claim against an estate for services performed with the knowledge and consent of the deceased to testify that he performed the services and paid out money for improvements on real estate. It is said, in the last-cited case, that to permit such evidence to be introduced "is in direct conflict with the cases of *Peck v. McKean, supra.*, and with *Wilson v. Wilson,* 52 Iowa, 44 (2 N. W. Rep. 615)." It is needless to cite other cases in which the same rule is followed. An examination of them will show that this court has uniformly held that a party in a controversy against the estate of a deceased person is not a competent witness to testify to any fact which tends to establish an express or implied contract between himself and the deceased.

V.   It ought to be stated here that, after the appeal was taken, and after the case was argued, Albert E.

Connable, to whom was awarded the sum of twenty-eight thousand six hundred and fifty-six dollars, filed an affidavit in the office of the clerk of this court, in which he stated he would have been better satisfied if the value of the farm had been fixed at sixteen thousand dollars, and that the charge of twenty-five thousand dollars is some nine thousand dollars more than it should have been. If Howard L. Connable, the other son, had joined in this request, the concession would have been acted on, and the award modified to that extent; but, in the absence of such consent, we must sustain the report, as we believe it is supported by a fair preponderance of the evidence. The case demands no further consideration, and the order approving the report of the executors is AFFIRMED.