W. A. GRIFFITH, Appellant, v. LIDA PORTLOCK, Executrix, Appellee.

LIDA PORTLOCK, Executrix, Appellee, v. ELIZABETH GRIFFITH et al., Appellants.

No. 45967.

DECEMBER 30, 1942.

REHEARING DENIED MAY 14, 1943.

Clark, Pryor, Hale & Plock, of Burlington, and Clifford M. Vance, of Mt. Pleasant, for appellants.

Charles L. Johnston, of Centerville, and McCoid & McCoid, of Mt. Pleasant, for appellee.

GARFIELD, J.—Claimant, W. A. Griffith, married a daughter of Frank Portlock, a retired farmer who died on February 19, 1939. His will, admitted to probate on March 27, 1939, devises a quarter section farm and a dwelling house in the town of New

London equally to his two children, Mrs. Griffith and Kineta Portlock "except that Mrs. Elizabeth Griffith shall first be remunerated for the expense of repairs put on the property in the north part of town while she lived there which shall not exceed Five Hundred ($500.00) Dollars." The will also provides for a lien against the share of the daughter Mrs. Griffith to the amount of $2,700, which it is admitted the testator had paid to take up two notes given by the claimant to banks, which the testator had signed as surety.

Claimant is a civil engineer. He and his wife occupied the above-mentioned house in New London from the summer of 1921 to May 1924, when they moved to Mt. Pleasant. During that time claimant modernized and improved the property. The expenditures made in so doing are the basis for his claim, filed on September 26, 1939. The basement was further excavated and enlarged, a furnace was put in, a bathroom added and other plumbing was installed, floors were sanded, and inside walls were papered, and the house was painted both inside and out. The garage was enlarged to accommodate two cars and a concrete drive was built. These were the principal improvements.

In the original claim the total expense on the property is given as $2,749.24. The claim was amended several times. By amendment of July 22, 1940, the items of expense on the house total $2,838.27. According to the amendment of March 13, 1941, the expense items total $3,074.83. All of the work was done and expenditures made not later than 1924, except that it is claimed some window glass was replaced in 1925 following a hailstorm, and settlement for the carpenter work of one Waller, done in 1924, was not made until June 20, 1931, after Waller's death.

After claimant vacated the property in May 1924, Portlock rented it to various tenants, receiving as rent down to the time of his death in 1939, according to claimant, $3,075. Claimant contends the owner would have received $1,068 as rent for that period if the improvements had not been made. He therefore included in his claim not only the expenditures alleged to have been made by him but also the difference between $3,075 and $1,068 in rentals, or $2,007. The total of the two large debit items in the claim as finally amended is thus somewhat more than

$5,000. The claimant admits the estate is entitled to the following credits: $192 for 32 months' rent of the property while occupied by the Griffiths from September 1921 to May 1924; $300 rent of two rooms and vault in garage for 120 months at $2.50; $87 rent of storage room and vault from May 1934 to February 1939 at $1.50 per month. Claimant also admits that testator paid his notes of $2,700 on which testator was surety. The total credits are thus $3,279, leaving a balance of about $1,800 which claimant seeks to recover.

An amendment to the claim alleges that the expenditures were made under an oral contract. Later, a second count was added which apparently sought recovery on quantum meruit. Defenses to the claim are a general denial, the statute of limitations, payment, that the improvements were for the benefit of claimant's family, and estoppel and waiver by reliance on the provision of the will directing remuneration to the amount of $500. An offset was also pleaded, one item of which is $500, paid by testator on May 20, 1922, for an automobile for claimant.

The lien sought to be foreclosed in the equity suit commenced by the executrix on April 17, 1940, against Mrs. Griffith and claimant is that created by the above-mentioned provision of the will. Mrs. Griffith and claimant pleaded his claim as an offset to the petition in equity. Following consolidation and trial of the probate claim and suit in equity, the claim was disallowed but the lien was established and foreclosed. The Griffiths have appealed.

We will refer briefly to the evidence for appellants. Claimant and his wife were incompetent under section 11257, Code, 1939, to testify to the expenditures for improvements made by claimant for decedent or to any fact which tends to establish an express or implied contract between claimant and decedent. Ballinger v. Connable, 100 Iowa 121, 129, 130, 69 N. W. 438; In re Estate of Kahl, 210 Iowa 903, 911, 912, 232 N. W. 133, and cases cited.

Mrs. Griffith, however, was not incompetent to testify that she overheard a conversation between her husband and father, in which she took no part, wherein her father told claimant to go ahead and install the furnace. In re Estate of Allis, 221

496

Iowa 918, 922, 267 N. W. 683; Diesing v. Spencer, 221 Iowa 1143, 1145, 266 N. W. 567, and cases cited.

Aside from the testimony of appellants themselves, the bulk of the evidence consists of somewhat uncertain and indefinite statements of different laborers and material men regarding labor and material furnished by them on the property at the request of claimant, who paid them. A number of the workmen had died prior to the trial. Several witnesses said they saw Portlock on the premises watching the work at various times. One witness who said he had had considerable experience in improving properties testified it would cost from $1,500 to $2,000 to make the improvements in question. Another witness who had charge of excavating for the basement, putting in the sewer and disposal plant and doing the masonry, testified the work he did was reasonably worth $1,000, also that the house alone was worth $1,550 more after it was improved than before. There is also testimony that Portlock told a prospective purchaser, probably in 1924, 1925, or 1933, "Will has considerable invested in it, I don't think I would better price it at this time." Appellants also showed the rentals paid by tenants who occupied the place after the Griffiths moved out. Appellants argue that the above-quoted provision from the will regarding remuneration up to $500 is a recognition of the indebtedness for which claim is made. Appellants say in argument "* * * 'the evidence as to just what the understanding was * * * as to paying for the improvements is admittedly somewhat scanty."

Several facts are inconsistent with the existence of the claim or afford substantial evidence of payment. Portlock was apparently well able to pay any amount he might be owing claimant. His estate was valued in excess of $50,000. He owned two quarter-section farms and a house in New London where he lived, aside from the property which was improved. All were unencumbered. Appellants, in effect, concede that no demand for payment was ever made upon Portlock. The executrix testified that after Portlock died and his will was probated she asked claimant when his $2,700 indebtedness to the estate would be paid. "Mr. Griffith said that just as quick as he could sell his farm down in Lee county that he would pay me." She further

testified that Mrs. Griffith directed that her half of the rent from the property in question be kept and applied on what the Griffiths owed the executrix; that "Mrs. Griffith said she would pay her husband's indebtedness just as soon as she could get the money"; also that no demand was made upon her before the claim was filed. None of this testimony is denied. As bearing on the above, see Baker v. Davis, 212 Iowa 1249, 1252, 235 N. W. 749, and cases cited.

It is not denied that in 1930 or 1931 Portlock signed as surety for claimant a note for $1,500 to a New London bank and a note for $1,080 to a Mt. Pleasant bank. The notes were renewed by both signers over a period of two or three years. It is admitted that Portlock took up these notes by paying $2,700 sometime before he made his will on January 2, 1934. It further appears that claimant furnished Portlock, or perhaps the bank, drainage warrants for $1,347 to secure decedent against loss on the note given the Mt. Pleasant bank. These warrants were in Portlock's possession when he died. On April 14, 1939, the executrix turned them over for collection to appellants, who signed a written receipt therefor in which they agreed that the proceeds of the warrants "shall be applied on the indebtedness for which they were pledged as collateral unless said notes have been paid in full into the estate of Frank Portlock." If decedent owed claimant the amount claimed by him it is somewhat strange that he would borrow from the banks with Portlock signing as surety and furnish the warrants to secure him. As having some bearing, though not directly in point, see Allen v. Bryson, 67 Iowa 591, 597, 25 N. W. 820, 56 Am. Rep. 358; In re Estate of Kahl, 210 Iowa 903, 906, 232 N. W. 133.

It also appears that on May 20, 1922, Portlock advanced $500 to enable claimant to buy an automobile. The inference is justified that this was a loan which claimant had requested from his father-in-law.

Claimant kept no book account of the amounts expended by him but says he kept some of the bills. A considerable part of his account was prepared from the daybooks of a lumber company.

The basis for the trial court's decision does not appear. We think a finding would be justified that the claim was not proven

by a preponderance of the evidence. We also think the claim is barred by the statute of limitations.

Claimant contends his is a continuous, open, current account that accrued on the date of the last item (section 11011, Code, 1939) and is not barred until five years from that date. Section 11007 (5). A "continuous, open, current account" is one "which is not interrupted or broken, not closed by settlement or otherwise, and is a running, connected series of transactions." Tucker v. Quimby, 37 Iowa 17, 19; Porter v. Chicago, Iowa & Dakota Ry. Co.,.99 Iowa 351, 355, 68 N. W. 724; Miller v. Boyce, 219 Iowa 534, 537, 258 N. W. 764. See, also, 34 Am. Jur. 79, section 96; annotation, 1 A.L.R. 1060. It may be conceded that the items for improvements made from 1921 to 1924 constitute such an account. As stated, however, the last of these items is dated in 1924 except for a repair item incurred probably in August 1925, and a payment in 1931 for work done in 1924.

It is obvious that claimant is not entitled to include in his account rentals collected by Portlock on his own property after the Griffiths vacated it. He has no claim to such rentals or any part thereof on any theory known to us. If the claim, filed in September 1939, is not barred, it must be because there is properly included therein one or both of the credits of $300, for use of two rooms and vault in the garage at $2.50 per month from May 1924 to May 1934, and $87, for storage and vault in the garage at $1.50 per month after May 1934. Claimant testified these amounts were the fair rental value of that part of the property. We think neither of these items can be coupled with the items of expenditures to make a continuous, open, current account.

It may be conceded that claimant had possession of part of the garage after he moved to Mt. Pleasant in 1924, presumably to store some belongings. We find no testimony thereof except from claimant himself over objection to his competency under section 11257. There is no evidence that decedent ever made or intended to make any charge for any such use or that he had any knowledge or notice of any credit extended him by claimant therefor. Both items were apparently voluntarily credited by claimant after Portlock's death. While we have recognized that the last item in

an account may be either on the debit or credit side (Ritter v. Schultz, 211 Iowa 106, 107, 232 N. W. 830, and cases cited), the bar of the statute cannot be avoided by the inclusion of such voluntary credits, without knowledge or consent, express or implied, of the other party. Leland v. Johnson, 227 Iowa 520, 525, 288 N. W. 595; 37 C. J. 875, section 239, note 75; 34 Am. Jur. 266, section 339.

Appellants have not argued that the provision of the will referred to at the outset constitutes a signed admission in writing that the debt is unpaid, sufficient to revive the cause of action under section 11018, Code, 1939. We therefore do not consider the question.

It may be thought that the claim of Mr. Griffith, even though barred, is a legal offset to the equity suit of the executrix. Such contention is also not argued and we do not consider it.

We understand appellee concedes that Mrs. Griffith is to be remunerated to the amount of $500, as provided by paragraph 4 of her father's will, and that the decree is not a denial of her right thereto.

The decree is—Affirmed.

WENNERSTRUM, C. J., and MITCHELL, STIGER, BLISS, OLIVER, and MILLER, JJ., concur.