**ROGER'S BACKHOE SERVICE, INC., Appellee,**

v.

**Jeffrey S. NICHOLS, Appellant,**

and

**Scott Price d/b/a Price Construction, Defendant.**

No. 02–2014.

Supreme Court of Iowa.

June 16, 2004.

Kevin P. Shea in association with Nazette, Marner, Wendt, Knoll & Usher, L.L.P., Cedar Rapids, for appellant.

William F. Creasey of Goedken & Creasey, Muscatine, for appellee.

CARTER, Justice.

Defendant, Jeffrey S. Nichols, is a funeral director in Muscatine. This action arises from a construction project that he undertook in 1998 involving the building of a crematorium and an enlargement and resurfacing of the parking lot at his funeral home. A dispute arose between Nichols and Roger's Backhoe Service, Inc. (Roger's) concerning invoices presented by Roger's for excavation work performed during the construction. The district court awarded Roger's the full amount claimed in the action.

The court of appeals reversed the district court's award and concluded that no enforceable contract had been established between the parties. After reviewing the record and considering the arguments presented, we conclude that the district court's judgment was supported by the evidence and was not the product of legal error. Consequently, we vacate the decision of the court of appeals and affirm the judgment of the district court.

In early 1998 Nichols decided to build a crematorium on the tract of land on which his funeral home was located. In working with the Small Business Administration, he was required to provide drawings and specifications and obtain estimates for the project. Nichols hired an architect who prepared plans and submitted them to the City of Muscatine for approval. These plans provided that the surface water from the parking lot would drain onto the adjacent street and alley and ultimately enter city storm sewers. These plans were approved by the city.

Nichols contracted with Roger's for the demolition of the foundation of a building that had been razed to provide room for the crematorium and removal of the concrete driveway and sidewalk adjacent to that foundation. Roger's completed that work and was paid in full. Scott Price d/b/a Price–Built Constructions (Price) was hired by Nichols as the contractor for building the crematorium and an enlarged concrete parking lot. Price contracted with Roger's to assist in a curb cut that was required by his contract. Roger's has been paid for that work, and it is not in issue in the present case.

After construction began, city officials came to the jobsite and informed Price and Roger's that the proposed drainage of surface water onto the street and alley was unsatisfactory. The city required that an effort be made to drain the surface water into a subterranean creek, which served as part of the city's storm sewer system. City officials indicated that this subterranean sewer system was about fourteen feet below the surface of the ground. Price

and Roger's conveyed the city's mandate to Nichols when he visited the jobsite that same day.

It was Nichols' testimony at trial that, upon receiving this information, he advised Price and Roger's that he was refusing permission to engage in the exploratory excavation that the city required. Nevertheless, it appears without dispute that for the next three days Roger's did engage in digging down to the subterranean sewer system, which was located approximately twenty feet below the surface. When the underground creek was located, city officials examined the brick walls in which it was encased and determined that it was not feasible to penetrate those walls in order to connect the surface water drainage with the underground creek. As a result of that conclusion, the city reversed its position and once again gave permission to drain the surface water onto the adjacent street and alley.

Two of the four invoices at issue in this litigation relate to charges that Roger's submitted to Nichols for the three days of excavation necessary to locate the underground sewer system and the cost for labor and materials necessary to refill the excavation with compactable materials and attain compaction by means of a tamping process. The other two invoices for which Roger's made claim against Nichols involved grading necessary to enable Price to perform the work called for in its contract with Nichols. The district court found that the amount of the charges submitted on the four invoices were fair and reasonable and that they had been performed for Nichols' benefit and with his tacit approval.

## I. Scope of Review.

■ This contract action was tried by ordinary proceedings and consequently is reviewed for errors at law. Iowa Const.

art. V, § 4; Iowa Code § 611.6 (2001). Trial court findings of fact are binding on us if supported by substantial evidence, but we are not precluded from inquiry into whether erroneous rules of law materially affected the decision. *In re Estate of Northup,* 230 N.W.2d 918, 921 (Iowa 1975); *Farmers Ins. Group v. Merryweather,* 214 N.W.2d 184, 186–87 (Iowa 1974).

## II. The Court of Appeals Opinion.

The court of appeals premised its reversal of the district court's decision on three separate and distinct conclusions. First, it concluded that an action based on an open account is a discrete cause of action with fixed legal elements that were not established in the matter before the court. Second, the court of appeals concluded that Roger's should not be able to establish an implied contract because it did not allege any oral or written contract in its petition as required by Iowa Rule of Civil Procedure 1.418. Finally, the court of appeals concluded that a necessary element in establishing an implied-in-fact contract is that the services performed be beneficial to the alleged obligor. It concluded that Roger's had failed to show that its services benefited Nichols.

## III. Whether Suit on an Open Account is a Discrete Cause of Action With Fixed Elements.

In concluding that suit on an open account is a discrete cause of action with fixed elements, the court of appeals relied on two lines of authority neither of which provide a satisfactory resolution of the issue. First, the court of appeals relied on the statements in *Griffith v. Portlock,* 233 Iowa 492, 7 N.W.2d 199 (1942), and *Tucker v. Quimby,* 37 Iowa 17 (1873), indicating that

[a] "continuous, open, current account" is one "which is not interrupted or bro-

ken, not closed by settlement or otherwise, and is a running, connected series of transactions."

*Griffith*, 233 Iowa at 498, 7 N.W.2d at 202 (quoting *Tucker*, 37 Iowa at 19). The *Griffith* and *Tucker* cases were not concerned with establishing the elements for recovery in an action on an open account. Rather, these cases dealt with the requirements to show that an open account existed for purposes of establishing the statute of limitations set forth in Iowa Code section 614.5 and its statutory predecessors. Consequently, we find these cases to be inapposite.

The court of appeals further described an open account as involving

an agreement between parties who have monetary transactions that all the items of the account representing such transactions, and the balance·struck, are correct, together with a promise, express or implied, to pay such balance.

(Citing *Weaver Constr. Co. v. Farmers Nat'l Bank*, 253 Iowa 1280, 1287, 115 N.W.2d 804, 808 (1962)). The cited language from the *Weaver Construction* case did not purport to describe the elements of an action on an open account in all situations. It was directed at the common-law cause of action for an account stated. Although a suit on an open account may be based on a legal theory of account stated, it may also be premised on other theories, which do not require the showing of a balance struck.

■ Although an account in its narrow sense envisions something evidenced by book records, in a general sense, it encompasses any claim or demand based on a transaction creating a debtor-creditor relationship. *In re Stratman's Estate*, 231 Iowa 480, 489, 1 N.W.2d 636, 643 (1942). We have held that, when the evidence fails to establish the elements of an account stated, the creditor may nevertheless recover by proving a contractual obligation for the individual items in the account and the fair and reasonable value of the amounts claimed. *St. Luke's Med. Ctr. v. Rosengartner*, 231 N.W.2d 601, 602 (Iowa 1975); *Jewett Lumber Co. v. Anderson Coal Co.*, 181 Iowa 950, 952, 165 N.W. 211, 212 (1917). In the *Rosengartner* case, we stated:

Maurice [the defendant] also contends that St. Luke's pleaded an account stated but did not prove one. The petition is broad enough, however, to encompass an action on account. In view of the parties' stipulation that St. Luke's furnished the services shown on the account and that the charges for her care are reasonable, the trial court found as a fact that Theresa [defendant's wife] "was a patient in plaintiff's hospital and she incurred charges for hospital services in the amount of $3161.25, which charges were fair and reasonable." St. Luke's is thus entitled to recover on the account, whether or not it established an account stated.

*Rosengartner*, 231 N.W.2d at 602 (quoting *Jewett Lumber Co.*, 181 Iowa at 952, 165 N.W. at 212). The establishment of an account in this manner was similarly approved in *McIntire v. Muller*, 522 N.W.2d 329, 331 (Iowa Ct.App.1994).

## IV. *Failure to Allege Whether Claim Was Based on Written or Oral Contract.*

■ As the court of appeals properly noted, Roger's did not allege a specific written or oral contract in its petition. The court found this to be a violation of Iowa Rule of Civil Procedure 1.418. Although that rule does require the pleading of special matters with respect to a contract claim, a failure to do so is not fatal. *See Berg v. Ridgway*, 258 Iowa 640, 643, 140 N.W.2d 95, 98 (1966) (failure to allege

nature of contract not fatal); *Simmermaker v. Int'l Harvester Co.*, 230 Iowa 845, 849, 298 N.W. 911, 913 (1941) (failure to allege nature of contract waived when motion for more specific statement not filed). As stated in *Berg,*

> [i]t is proper to move to make the petition more specific by stating whether a contract is written or oral. And it is also proper to seek such information by interrogatories.... The petition was not fatally defective [for failure to allege the nature of the contract], nor did the failure to comply with rule 91 [now rule 1.418] render evidence of the contract inadmissible.

258 Iowa at 644, 140 N.W.2d at 98 (citation omitted).

The facts underlying the alleged contractual relationship were adequately described in the petition, and Nichol's failure to seek further information by motion or interrogatory, as suggested in *Berg,* precludes any complaint based on the state of the pleading. The evidence offered at trial clearly revealed the theory of implied-in-fact contract upon which the district court based Roger's' recovery.

## V. *Sufficiency of the Evidence to Establish Implied–in–Fact Contract.*

The district court's findings amounted to a determination that an implied-in-fact contract had been established under the principles set forth in Restatement (Second) of Contracts section 69 (1981). That commentary provides:

> Ordinarily an offeror does not have power to cause the silence of the offeree to operate as acceptance.... The exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance.

Restatement (Second) of Contracts § 69 cmt. *a* (1981) (citation omitted) [hereinafter Restatement]. The bold-letter text of this section provides:

> (1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:
>
> (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.

Restatement § 69. This Restatement provision in its tentative draft form was given approval by this court in *Prestype, Inc. v. Carr,* 248 N.W.2d 111, 120–21 (Iowa 1976).

We agree with the district court that, even if Nichols, at the time he first learned of the city's requirement of extra excavation, expressed the opinion that it should not be done, if the work was subsequently undertaken and performed for three days with his knowledge and in his presence, he was bound to call off the digging if he did not intend to pay for it. The evidence is also sufficient to support the district court's finding that (1) the excavation, filling, and tamping required by the city's demands were not a part of Price's contract and should be paid for by Nichols; and (2) Roger's' charges were fair and reasonable.

The district court's resolution of the controversy is further aided by the following commentary in the Restatement:

> Problems of offer and acceptance are important primarily in cases where advance commitment serves to shift a risk from one party to the other, as in sales of goods which are subject to rapid price fluctuations, in sales of land, and in insurance contracts. Controversies as to

whether and when the commitment is made are less likely to be important even in such cases once performance is well under way. Offer and acceptance becomes still less important after there have been repeated occasions for performance by one party where the other knows the nature of the performance and has an opportunity for objection to it. In such cases it is unnecessary to determine the moment of making of the contract, or which party made the offer and which the acceptance.

Restatement § 22 cmt. *b* (citations omitted). In the present case, the district court could justifiably have found that Roger's' undertaking to do the work constituted a fresh offer to undertake the project, which was accepted by Nichol's silence.

### VI. *The Need to Show Benefit.*

 In describing the elements of an action on an implied contract, the court of appeals stated in *Iowa Waste Systems, Inc. v. Buchanan County*, that

the party seeking recovery must show:
(1) the services were carried out under such circumstances as to give the recipient reason to understand:

(a) they were performed for him and not some other person, and

(b) they were not rendered gratuitously, but with the expectation of compensation from the recipient; and

(2) *the services were beneficial to the recipient.*

617 N.W.2d 23, 30 (Iowa Ct.App.2000) (quoting *Bloomgarden v. Coyer*, 479 F.2d 201, 208–09 (D.C.Cir.1973) (footnote omitted)) (emphasis added). In applying the italicized language in *Iowa Waste Systems* to the present controversy, it was the conclusion of the court of appeals that Roger's' services conferred no benefit on Nichols. We disagree. There was substantial evidence in the record to support a finding that, unless and until an effort was made to locate the subterranean sewer system, the city refused to allow the project to proceed. Consequently, it was necessary to the successful completion of the project that the effort be made. The fact that examination of the brick wall surrounding the underground creek indicated that it was unfeasible to use that source of drainage does not alter the fact that the project was stalemated until drainage into the underground creek was fully explored and rejected. The district court properly concluded that Roger's' services conferred a benefit on Nichols.

### VII. *The Extra Work.*

Our discussion up to this point has involved the recovery awarded to Roger's for the excavation, filling, and tamping necessitated by the city's demands. The other items for which he recovered involved site preparation around the crematorium and new parking area. Roger's testified that this work was done at the express request of Nichols and was not part of Price's contract. Price testified that this site preparation was not part of his contract. The issue of Nichol's liability for this site preparation was an issue of fact. The district court's findings resolving the matter in favor of Roger's and against Nichols are supported by substantial evidence and binding on us. We have considered all issues presented and conclude that the decision of the court of appeals should be vacated. The judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**