Edwards & Beardsley v. Cottrell & Babcock et al.

EDWARDS & BEARDSLEY V. COTTRELL & BABCOCK ET AL.

1. **Practice:** EXCEPTIONS TO REFEREE'S REPORT. To secure a review of the findings and conclusions of a referee, it is not essential that the exceptions thereto be taken before the report is signed and noted therein; they may be made to the court after the report is filed.

2. **Mortgage:** SALE OF CHATTEL THEREUNDER. The mortgage of a chattel with power of sale by the mortgagee, upon default in payment, confers upon him no right to barter the mortgaged property, or to dispose of it otherwise than for cash.

3. ————: REPLEVIN: DISCHARGE OF SURETY. Where a party claiming to be the owner of a chattel in the possession of another replevins the same, but his interest is adjudged to be that of a mortgagee entitled to the possession, the surety upon his replevin bond is discharged from liability thereon.

4. **Landlord's Lien:** HOW CLAIMED. The lien of a landlord for rent may be asserted in an action of replevin, in which the tenant's goods have been seized by an alleged owner.

*Appeal from Des Moines District Court.*

TUESDAY, APRIL 25.

Massman, Helmuth & Foestinger, composing the Iowa Journal Company, as co-partners, sent an order to Cottrell & Babcock, of New Jersey, through Fergus & Son, agents, of Chicago, for a printing press, which was at once sent and delivered, $400 of the price being paid down.

On the 1st of July, 1870, Massman, Helmuth & Co. leased rooms of Mellinger & Co., and they placed the printing press in and used it upon said premises.

On August 30, 1870, Helmuth and Foestinger, the remaining partner, Massman, having withdrawn, executed a chattel mortgage on the press to E. G. Wright, to indemnify him as security upon a note signed by him for $150, and the mortgage was on the same day acknowledged and recorded.

On September 8, 1870, Massman and Helmuth executed a chattel mortgage upon the press in favor of Cottrell & Babcock, for the deferred payments on the original purchase, viz.

$850, payable in three equal installments, December 8, 1870, and March 8, and June 8, 1871.

Afterwards Cottrell & Babcock brought a replevin suit, based upon their mortgage, for the possession of the printing press, against Massman and Helmuth, and Mellinger & Co., and obtained possession of the property, and placed it in the possession of Osborn, Snow & Co. for keeping.

On the 3d day of December, 1870, plaintiffs commenced an action of replevin against Cottrell & Babcock, and Osborn, Snow & Co., for the printing press, claiming it as absolute owners, in virtue of the purchase thereof from E. G. Wright.

On the 12th day of June, 1872, Cottrell & Babcock filed an answer and cross-petition. In their answer they aver that the printing press was in their possession by virtue of the first replevin suit, and was in the custody of the law, and they deny that plaintiffs are entitled to the possession of said property.

In their cross-petition they set forth the facts under which they claim the property, and they ask that E. G. Wright may be made a party thereto, and that all the several suits may be consolidated. An order was made consolidating the suits already mentioned, and Wright was notified and made a party. On the 25th of June, 1872, he filed his answer, setting forth the chattel mortgage to him, and his sale of the press to Edwards & Beardsley for $790, receiving as part consideration 160 acres of land at $640, and alleging that he was ready to pay the cash or convey the land.

Edwards & Beardsley filed their answer, averring that they purchased the press on the 2d day of December, 1870, from E. G. Wright, and paid therefor in good faith.

In answer to this cross-petition, Mellinger & Co. set up their lease, averred the amount of rent due, and claimed that, by reason of their landlord's lien, their demand was paramount to all other claims.

By mutual consent the cause was referred to George Robertson, Esq., to report conclusions of fact and of law, and, on the 24th of May, 1874, he filed the following report:

"The case involves the title to, and the priority of lien

upon, a printing press, known as Cottrell & Babcock's Improved Newspaper Printing Press:

I.   Cottrell & Babcock claim that, by the terms of the sale by them to the Iowa Journal Co., the title of the press was to be and remain in them until the notes and mortgage on the press, to secure the balance unpaid on the press, were executed by the vendees.

II.   Mellinger & Co., as landlords, claim that the sale was absolute and complete upon the delivery of the press, and that their lien for rent unpaid, and to accrue, is superior to all others.

III.   Edwards & Beardsley claim that the sale by Cottrell & Babcock to the Iowa Journal Co. was absolute, and that they are the rightful and legal owners of the press, by virtue of a sale by Wright, mortgagee, after conditions broken, and also by reason that Mellinger & Co., not commencing their action within the time allowed by law, are barred.   Under the testimony, I find:

1.   In July, 1870, about the 6th or 7th, the Iowa Journal Company, a copartnership composed of Helmuth, Massman & Foestinger purchased of Cottrell & Babcock, of Westerly, Rhode Island, a printing press, the one in question.   The negotiations were had with Robert Fergus & Sons, of Chicago, Ill., agents of Cottrell & Babcock.   After the terms had been settled between them, the contract was reduced to writing in the form of an order, signed by Massman, directed to Cottrell & Babcock, setting forth the terms, etc., viz: $400 cash, and balance of $850 in six and nine months, secured by mortgage on the press, purchaser to pay the freight, etc.   Upon this order the press was sent to Massman, and reached Burlington July, 1870.

2.   Mellinger & Co., on July 1st, 1870, by written contract, leased Massman, Foestinger & Helmuth the premises on Jefferson street, at an annual rent of $350, payable monthly. They took possession and occupied about six months.   The printing press was put into and used upon the premises till about November or December, 1870, when it was taken away by Cottrell & Babcock, on writ of replevin.   The rent had not been paid up to that date, nor since.

3. On August 30th, 1870, by a chattel mortgage executed by Helmuth and Foestinger, they mortgaged the press to E. G. Wright to secure him as the indorser of a note for $150, with usual condition.

4. On September 8th, 1870, Massman & Helmuth executed and delivered to Cottrell & Babcock their notes and mortgage for the unpaid balance of purchase money.

5. The printing press remained in the building of Mellinger & Co., until taken away by Cottrell & Babcock on writ of replevin, and was afterward placed by them in Osborn, Snow & Co's. establishment as custodian.

6. After Wright paid the note for $150 to the bank for Helmuth, as indorser, on December 2d, 1870, under the conditions of his chattel mortgage, he sold, or rather traded the press to Edwards & Beardsley at private sale, with warranty of title, and took in payment thereof two notes on E. E. Gay, for $75 each, and 160 acres of land in Crawford county, Iowa, valued at $4 per acre.

I find as a fact that Wright tried to sell the press to other parties; also, that he was cognizant of the other claims and liens upon the property, at the time he sold to Edwards & Beardsley.

7. Edwards & Beardsley demanded the press of Osborn, Snow & Co., who had it as custodians for Cottrell & Babcock, and, they refusing to deliver it up, obtained it by writ of replevin.

8. I find that Cottrell & Babcock offered to pay the claim of Wright on the press at the time Edwards & Beardsley demanded the press of Osborn, Snow & Co., which Wright refused, assigning as a reason that he had sold the press to Edwards & Beardsley under his mortgage.

9. I find that the press was worth $1,300 at the time it was taken from Osborn, Snow & Co., and that he was offered that sum for it, provided he would warrant the title.

10. I find the amount of Mellinger & Co's. claim for six months' rent to be, with interest, $210; Wright's claim, with interest, $152.50; Cottrell & Babcock's claim, with interest, $1,058.15.

Conclusions of law:

1. I find that, when the press was shipped under the written order, the sale was completed, and the title to it vested in the Iowa Journal Company, without conditions.

2. The press went into the leased premises unincumbered, and the lien of the landlord, for rent accrued and to accrue, attached immediately, and is paramount to all others. It is true Mellinger & Co. did not commence proceedings under the statute to enforce their lien, yet they were made parties to the Cottrell & Babcock replevin suit; and having set out their rights in their answer therein, the property was sufficiently in the custody of the law to protect their rights and preserve their lien, although more than six months had elapsed since the termination of their lease.

3. The mortgage executed August 30, 1870, to Wright is a valid lien, and is prior to all others except that of Mellinger & Co., notwithstanding Massman did not sign it, he having at the time ceased to be a member of the firm.

4. The lien of Cottrell & Babcock is a valied lien, next in order to Wright's.

5. * * * * Although the general principles of law in regard to chattel mortgages seems to vest the title to the mortgaged property in the mortgagee absolutely, the general principle has been greatly modified by the Supreme Court in *Doane v. Garretson*, 24 Iowa, 353, which holds that the mortgagor has an equity of redemption. This principle applies to this case with much force, where there are other lien creditors.

At the time Wright made the trade to Edwards & Beardsley, he had full knowledge of the claims and complications surrounding the property. And hence, although his mortgage in terms provided for a private sale of the property, yet, considering the smallness of his claim, and the rights of other parties, he should have exercised the extremest prudence and fairness, and should have pursued the provisions of the statute in regard to foreclosure of chattel mortgages strictly. This was not done. Wright traded the property for much less than its value, and for something or nothing, as it

may turn out.   The other lien-holders should not be com-pelled to take their pay in property, or trust to the chances to make their money out of land received by Wright.

That there has been no offer to redeem will make no differ-ence, as the equitable answer of Cottrell & Babcock is suffi-cient to bring the whole case before the chancellor, and to have the rights of all parties adjusted.

As there was no fraud or collusion between Edwards & Beardsley and Wright, in the trade, and inasmuch as Wright warranted the title, the sale should stand, and Wright must account for the value of the press, $1300; to be distributed as hereinbefore found."

At the date of this report, Wright was solvent, so far as anything in the record shows.   Wright filed exceptions before the referee to his several findings and conclusions.   Cottrell & Babcock and Edwards & Beardsley filed no exceptions before the referee.

On October 1, 1874, Wright filed his motion to suspend proceedings against him, for the reason that since the filing of the report he had been adjudged a bankrupt.

In June, 1875, Cottrell & Babcock and Mellinger & Co. filed exceptions to the report of the referee; among other things, to that part of conclusion of law No. 5, which holds that the sale by Wright to Edwards & Beardsley should stand, because the facts and law show that the sale was ille-gal and should be declared void, and Edwards & Beardsley should have been held to account for the value of the press.

E. G. Wright's exceptions before the referee, to his findings and conclusions, were continued, by reason of Wright's bank-ruptcy.

The court sustained the exceptions of Cottrell & Babcock and Mellinger & Co., as to the 5th conclusion of law, so far as it held that the sale of the press by Wright to Edwards & Beardsley should stand, and vest them with the title, the court holding that Wright had no power to sell for anything but cash; that the sale was for less than the full value of the press; and that Edwards & Beardsley were bound to know what Wright's powers were under the mortgage.

A decree was entered in favor of Cottrell & Babcock against Edwards & Beardsley, and their surety in the replevin bond, L. Teedrick, for the value of the press, $1300, and interest, less the $150 and interest received by Wright in the Gay notes, of which amount $225 was for the use of Mellinger & Co.

Edwards & Beardsley excepted to the action of the court in sustaining the exceptions to, and setting aside conclusion of law No. 5:

1. Because the said parties had not taken and filed exceptions to any part of said report, or any action of the referee, and no such exception had been returned or reported by the referee.

2. Because said report, in the respect objected to, was correct and legal, and the sale to Edwards & Beardsley was valid and ought to stand.

Edwards & Beardsley and L. Teedrick appeal.

*Hall & Baldwin,* for appellant.

The District Court is not authorized to review the evidence taken before a referee, or any ruling made by him, unless such evidence and ruling are presented by bill of exceptions duly signed by the referee. (*Inman v. Jamison,* 18 Iowa, 22; *Oliver v. Townsend,* 16 Id., 432; *State v. Orwig,* 27 Id., 532 ) Upon default by the mortgagor, the mortgagee becomes invested with the absolute title of the chattel. (*Bean v. Barney,* 10 Iowa, 498.) The mortgagors retained no interest which could be levied on and sold under execution against them. (*Campbell v. Leonard,* 11 Iowa, 489.) After the condition is forfeited, the mortgagee has an absolute interest in the thing mortgaged, so that the mortgagor cannot, by tendering the debt, entitle himself to an action of trover against the mortgagee. (*Rogers v. Traders' Ins. Co.,* 6 Paige, 587; *Brown v. Bement,* 8 Johns., 96; *Ackley v. Finch,* 7 Cow., 290.) The purchaser of personalty sold under a mortgage, obtains a perfect and indefeasible title, and there is no equity of redemption from him; the fact that the purchaser knows

his vendor is only a mortgagee makes no difference in the character of the title acquired. (*Bryant v. Carson*, 3 Nev., 313; *Leach v. Kimball*, 34 N. H.; *Talman v. Smith*, 39 Barb., 390.)

*Thomas Hedge, Jr.*, *P. H. Smyth* and *C. H. Phelps*, for appellees.

The law compels purchasers of personal property, with knowledge of an existing mortgage, to take it upon the vendor's warranty of title, and to look to him for indemnity. (*Bigelow v. Smith*, 2 Allen, 265.) The mortgagee may be summoned as the trustee of the mortgage, and the extent and validity of the lien may be tried in that form. (*Bigelow v. Smith, supra;* Willard's Eq. Jur., 455.) A sale will only be inferred when the words used operate to pass rights of property for money. (*Williamson v. Berry*, 8 How., 544; *Bigley v. Risher*, 63 Pa. St., 155; 2 Blackst. Com., 446.)

DAY, J.—I. At the time of the filing of the report of the referee, May 24th, 1874, Wright was supposed to be solvent. Mellinger & Co., and Cottrell & Babcock were satisfied with a judgment against him. The report of the referee exonerated Edwards & Beardsley from liability. The only party, therefore, who took exceptions before the referee, to his report, was Wright. Before judgment was rendered upon the report, Wright filed a motion to suspend proceedings against him for the reason that he had been adjudged a bankrupt, since the filing of the referee's report. Thereupon Cottrell & Babcock, and Mellinger & Co., filed exceptions to that part of conclusion of law number five, which holds that the sale by Wright to Edwards & Beardsley should stand. Appellants now insist the court below can review the action of the referee only upon exceptions taken before and signed by him; and that, in acting upon the report of a referee, the power of the Circuit or District Court is appellate. In support of this position reference is made to the Code, sections 2819, 2820, 2821, 2822, 2823, 2830 and 2831.

This position of appellants, we think, is not tenable. It is

true section 2820 provides that the trial shall be conducted in the same manner as a trial by the court. Section 2821 provides that the report of the referee shall stand as the finding of the court, and judgment may be entered thereon in the same manner as if the action had been tried by the court, and ·the report may be excepted to and reviewed in like manner. Section 2823 requires the referee to sign any true bill of exceptions taken to any ruling made by him in the case, whenever any party demands a bill of exceptions.

*1. PRACTICE: exceptions to referee's report.*

The purpose of this last section is to preserve and present any objection to rulings made during the progress of the trial, which otherwise would not appear of record, such as the admission or rejection of testimony and the like.

We cannot believe the intention to have been to deny a party the right to have a review of the conclusions of law by the referee, or of the correctness of the facts found by him, unless exception thereto is taken before the referee before the filing of the report. Such a course would, in practice, prove very inconvenient, if not altogether impracticable. When all the evidence is submitted to a referee he usually takes time for the examination of it, and the preparation of his report.

When the report is prepared it is filed in court without being submitted to the parties, and without giving them opportunity to except to the conclusions of fact or of law.

The referee stands in the place of the court. His report on the facts and conclusions of law stands as the finding of the court, and they may be excepted to and reviewed in like manner. That is, as we understand it, the referee is simply substituted for the court, for the determination of the questions of fact and of law. When the report of the referee is filed, it stands in the same position and has the same effect as would a like finding of the facts and the law by the court.

The party aggrieved thereby may file his exceptions, and may call upon the court to review or reconsider the finding, upon questions of law, and upon questions of fact, if the evidence has properly been preserved, and from the ruling of the court upon these exceptions he may have his appeal.

The correctness of this position, although not directly determined in, may be fairly inferred from the case of *Oliver v. Townsend*, 16 Iowa, 430.

In that case, upon the coming in of the report of the referee, the defendants excepted to it, and moved to set it aside. It was held that the exception to the report, on the ground that it was not sustained by the evidence, was properly overruled, because it did not appear that all the evidence had been certified to the District Court with the report. No suggestion was made that such objection could not be made for the first time after the filing of the report.

In *Morris v. Hudson*, 8 New York, 204, a construction was adopted which seems to be at variance with the doctrine of this opinion. The question is purely one of practice, and we are satisfied that the foregoing view is the better one.

II. The conclusion of law that, when the press was shipped under the written order, the sale was completed, and the title vested in the Iowa Journal Company, without conditions, is a proper deduction from the facts found by the referee.

The record does not purport to contain all the testimony, and it is quite apparent that, in fact, it contains but a small portion of it. We cannot, therefore, review any of the findings of fact, but must consider them as properly determined by the referee. The press in question was mortgaged by Helmuth & Foestinger, on the 30th day of August, 1870, to E. G. Wright, to secure him as the indorser of a note for $150. It was also mortgaged by Massman & Helmuth to Cottrell & Babcock on the 8th day of September, 1870, for the unpaid balance of the purchase money. No objection is made to the legal conclusion that these mortgages are valid.

The lien of Wright is, therefore, prior in point of time, and superior to that of Cottrell & Babcock. The referee found that "After Wright paid the note for $150.00 to the Bank, for Helmuth as indorser, on December 2nd, 1870, under the conditions of his chattel mortgage, he sold, or rather traded the press to Edwards & Beardsley at private sale, with warranty of title, and took in payment thereof two

notes on E. E. Gay, for $75.00 each, and 160 acres of land in Crawford county, Iowa, valued at $4 per acre,"

As a conclusion of law the referee found that this sale to Edwards & Beardsley should stand, and that Wright must account for the cash value of the press.

Upon exception to this part of the finding of the referee the court held that Wright had no power to sell for anything but cash; that the sale was for less than the full value of the press; and that Edwards & Beardsley were bound to know what Wright's powers were under the mortgage.

In this determination the court was clearly right. A mortgage of a chattel with power of sale confers no right to ex-change the mortgaged property for other property. 2. MORTGAGE: sale of chattel thereunder. Sale means at all times a contract between parties to pass rights of property for money, which the buyer pays, or promises to pay the seller. *Williamson et al v. Berry*, 8 Howard, 544; *Bigley v. Risher*, 63 Penn. St., 155. Where a party mortgages a chattel with power of sale, he is entitled to the excess of the proceeds of the sale over the amount of the debt secured, and the mortgagee has no right, without the consent of the mortgagor, to barter the mortgaged property for other, or to compel the mortgagor to take in anything else than money the excess in value of the mortgaged property over the debt secured. The only effect of the sale to Edwards & Beardsley, therefore, was to transfer to them the lien which Wright had for the payment of $150.00.

III.   Cottrell & Babcock brought a replevin suit, based upon their mortgage, for the possession of the printing press, against Massman & Helmuth, and Mellinger & Co., and, obtaining possession of the press, they placed it in the possession of Osborn, Snow & Co. for keeping.   Afterward Edwards & Beardsley commenced their action of replevin against Cottrell & Babcock and Osborn, Snow & Co., for the possession of the press, claiming it under the purchase from Wright. 3. —— : replevin : discharge of surety.

L. Teedrick was surety upon the replevin bond.   The court below rendered judgment against Edwards & Beardsley and L. Teedrick, surety upon the replevin bond, for $1,300, the

value of the press, less the amount of Wright's lien. This was error. We have already seen that Wright's mortgage created a lien superior to that of Cottrell & Babcock, and that the transfer to Edwards & Beardsley invested them with this lien. At the time of the commencement of their. replevin suit, Edwards & Beardsley were entitled to the possession of the press, as against Cottrell & Babcock, and the only thing which prevented a judgment awarding them the possession, was the consolidation of the several cases, and their transfer to the equity docket. This consolidation and transfer ought not to prejudice the rights of the surety on the replevin bond. As the parties for whom he stood surety were entitled to the possession of the property, at the time the replevin suit was commenced, the surety upon the replevin bond should be discharged from liability.

It is true Edwards & Beardsley claimed to be the owners of the press under a purchase from Wright; but they were required to prove no more than was necessary to entitle them to the possession of the press. Code, section 2729.

IV. As appears from the findings of fact, Mellinger & Co., on July 1, 1870, by written contract, leased Massman, Foestinger and Helmuth certain premises on Jefferson street, at an annual rent of $350, payable monthly. They took possession and occupied about six months. The printing press was put into and used upon the premises till about November or December, 1870, when it was taken away by Cottrell & Babcock, on writ of replevin. The rent had not been paid up to that date, and has not since been paid. Mellinger & Co. claim that they have a prior lien over all others, for the rent due them; whilst upon the other hand it is claimed that their lien has been lost under section 2017 of the Code, which provides that the lien shall not in any case continue more than six months after the expiration of the term.

4. LANDLORD'S lien: how claimed.

Upon this claim for rent the referee found, as a conclusion of law, that the press went into the premises leased from Mellinger & Co. unincumbered, and that the lien of the landlord for rent, accrued and to accrue, attached immediately, and is paramount to all other liens; and that although

Mellinger & Co. did not commence proceedings under the statute to enforce their lien, yet, being made parties to the Cottrell & Babcock replevin suit, and having set out their rights in their answers therein, the property was sufficiently in the custody of the law to protect their rights and preserve their lien, although more than six months had elapsed since the termination of this lease. The court also recognized this doctrine in giving Mellinger & Co. a lien for their rent.

From appellant's abstract it would seem that the first claim made by Mellinger & Co., for a lien for their rent, was in answer to the cross-petition of Cottrell & Babcock, which petition was filed June 12th, 1872.

But an additional abstract of Mellinger & Co. shows that they were made parties to the original replevin suit of Cottrell & Babcock, and that, in answer to that suit, in January, 1871, which was within two months of the termination of their lease, they set up their claim and lien for rent, and asked judgment for a return of the property to them.

In view of this fact, the court did not err in preserving their lien.

V. The court rendered judgment against Edwards & Beardsley for the value of the press, as found by the referee. In this there was error. The press never has been sold under the chattel mortgage. Edwards & Beardsley have simply succeeded to Wright's lien.

It is ordered, therefore, that the press be sold under the chattel mortgage, as its terms prescribe ; that out of the proceeds there be paid, first: the claim of Mellinger & Co., $210, with interest from May 24th, 1874, the date of the referee's report, with interest at six per cent; second: to Edwards & Beardsley the amount of the Wright lien, $152.50 with like interest; third: to the payment of Cottrell & Babcock's claim, $1,058.15, with interest from the same time. If anything remains it shall be paid to the mortgagors. If Edwards & Beardsley have placed the press beyond the reach of special execution, judgment shall be entered against them for its value, $1,300.00, to be applied as above named.

The costs of appeal will be paid by Cottrell & Babcock, and by Mellinger & Co., in the proportion, as nearly as may be, of their respective liens.

REVERSED