IN RE ESTATE OF SAMUEL MALVIN, Deceased. JANE CLOUD, Contestant.

**Practice Before Referee:** EXCEPTIONS. Exceptions to the report of a referee, filed in vacation, must be filed within three days after the term of court next following the actual filing of the report.

SAME. That, after exceptions are filed later than stated above, the parties agree upon a correction of the report, to which the referee accedes and to which the court modifies the report, does not cure the delay.

**Referee: Powers.** After filing report, a referee has no further jurisdiction except by order of court or agreement of parties.

*Appeal from Delaware District Court.*—HON. JOHN J. NEY, Judge.

THURSDAY, DECEMBER 20, 1894.

Proceeding in probate against Sarah Malvin, as administratrix of the estate of Samuel Malvin, deceased, for a judgment against her for the value of the share of his estate belonging to said contestant, which has been wasted.—*Affirmed*.

*W. H. Utt* for the estate, appellant.

*Yoran & Arnold* for appellee.

Kinne, J.—I. Since this appeal was taken, Sarah Malvin has died, and W. H. Malvin and S. Malvin have been appointed and qualified as administrators of her estate. A proper motion having been made therefor,

it is ordered that they be substituted as parties in lieu of said deceased.

II. Samuel Malvin died on January 16, 1872, leaving surviving him his widow, Sarah Malvin, and eleven children, eight of whom were of age. On March 13, 1872, P. S. Malvin, his eldest son, applied to the proper court in Delaware county, Iowa, for the appointment of himself and his mother as administrator and administratrix of said estate. They filed the usual bond, and letters were issued to them. P. S. Malvin alone filed an inventory of the personal property, consisting mostly of live stock on the farm of the deceased; also some promissory notes. P. S. Malvin and decedent had for years prior to the latter's death been partners in their farming operations, and as such owned the personal property on the farm at the time of the father's death. It was appraised at over four thousand dollars, one-half of which belonged to the decedent. On October 14, 1878, the widow and all of the heirs filed a petition in the court, setting forth that P. S. Malvin had committed great waste, and had converted the assets of the estate to his own use, and asking the court to release the only bondsmen who resided in this state. An order to that effect was entered. In 1888, Sarah Malvin filed her report as administratrix of said estate, setting forth, in substance, that her coadministrator, P. S. Malvin, had taken sole charge and control of the estate; that he had wasted the same and converted it to his own use; that no part of the property ever came into her possession, or under her control; that she could not further show what had become of said property; that P. S. Malvin absconded in 1878, and had never been heard of since; that thereafter the heirs came to an agreement as to a settlement of the estate and a distribution of the property; that by the terms of the said settlement certain of the heirs were to receive cer-

tain lands, among them being Jane Cloud, the daughter
of the deceased, and the contestant herein; that other
heirs were to receive money; in consideration of this
settlement and distribution, this administratrix and
her bond were to be released, and the estate considered
settled; that deeds were thereafter executed in pursu-
ance of said settlement, and that Jane Cloud received
and accepted a deed to certain real estate in full set-
tlement of her interest in the real and personal prop-
erty of said estate.    At this time all of the heirs,
except Jane Cloud, petitioned the court for the release
of their mother as administratrix of said estate.    Jane
Cloud excepted to the report of the administratrix on
the ground that she had knowledge that her coadmin-
istrator removed and sold the personal property, and
that the proceeds and personal property of the estate
were all being used as partnership property by herself,
her coadministrator, and others of the family.    The
exceptions also set up the bond, and claimed that
Sarah Malvin therein bound herself as surety for the
acts of P. S. Malvin, and denied that any settlement
had been made with her.    The report and exceptions
were referred to Hon. Charles Husted as a referee to
report upon the facts and the law.    The referee's report
was filed on April 2, 1892, and found, among other
things, that "the property in which the estate owned
the undivided one-half was in the actual possession of
Sarah Malvin at the time of the inventory, and she per-
mitted her coadministrator, P. S. Malvin, to remove it,
and reduce the same to his own possession, and that he
afterward wasted it."    Also that there was no agree-
ment of settlement, whereby Sarah Malvin was to be
released from liability to contestant for her share of
the personal property.    Among other conclusions of
law, the referee found that, as the personal property
belonging to said estate, other than notes, was in the

possession of said administratrix, she should have administered upon the same; that she failed so to do, and permitted her coadministrator to remove said property from her possession to his sole possession, and that while he so held it he converted it to his own use, and that she was liable to the contestant for her share of the same, being two thirty-thirds thereof, and fixing the amount; that she was also liable to the contestant for her share of certain notes stated; that her liability for waste of said notes grew out of the execution as principals by her and P. S. Malvin of their joint bond, whereby she became a surety for her coprincipal. June 10, 1892, the administratrix filed exceptions to the report of the referee both of fact and law, and embracing the matter heretofore stated. On the same day contestant moved to strike the exceptions from the files, because the first day of the term was May 23d, and the exceptions were not filed until the seventh day of the sessions of the court. The administratrix filed a supplemental report, setting forth certain notes, and showing that the statute of limitations had run against them before the death of the intestate, and that they were worthless; whereupon the parties agreed, and it was conceded by the referee, that the amount of these notes should be deducted from the total amount of the judgment recommended to be rendered against the administratrix. The court then entered judgment sustaining the motion to strike the exceptions, and approved the report as modified by the aforesaid agreement, and rendered judgment accordingly. From this ruling and judgment the administratrix appeals.

III. The first question presented is upon the court's ruling in striking the exceptions of the administratrix from the files. If this order is sustained, it leaves the appellant without any exceptions filed to the report of the referee, and hence without a standing in this court to question the correctness of the findings

of the referee and the action of the court thereon.   It
has been the uniform holding of this court that in order
to review the report of a referee, on appeal, in this court
it is necessary that exceptions be taken thereto in the
lower court.   *Roberts v. Cass*, 27 Iowa, 226; *Edwards
v. Cottrell*, 43 Iowa, 201; *Washington Co. v. Jones*, 45
Iowa, 262; *Bauder v. Hinckley*, 60 Iowa, 185, 14 N. W.
Rep. 228; *Bolton v. Kitsman*, 80 Iowa, 343, 45 N. W.
Rep. 876; *Feister v. Kent*, 91 Iowa, 1, 60 N. W. Rep. 495.
So, also, it has been held that unless an exception has
been taken to the judgment in such cases it is not suffi-
cient.   *Bauder v. Hinckley*, 60 Iowa, 185, 14 N. W. Rep.
228; *Bolton v. Kitsman*, 80 Iowa, 343, 45 N. W. Rep.
876.   We must, then, determine as to whether
these   exceptions were filed within the proper
time.   The statute provides that "the trial by referee
shall be conducted in the same manner as a trial by
the court."   Code, section 2820.   By section 2821 it is
provided that the report may be excepted to and
reviewed in like manner as if the action had been tried
by the court.   Section 2830 requires conformity in
proceedings before referees to the rules observed in
trials to the court.   Section 2831 provides:   "An
exception is an objection taken to a decision of the
court or party acting as the court on matter of law.
The party objecting to the desicion must do so at the
time the same is made (but if decision is on motion,
demurrer or judgment exceptions may be taken within
three days) and embody his objection in a bill of excep-
tions.   *   *   *   *"   From the foregoing statutes and
decisions it clearly appears that, in order to bring up
for review in this court alleged errors in the report of
the referee, timely exceptions must be filed thereto in
the trial court.   The rule is the same as if the case
had been tried to the court.   It appears in this case
that the referee's report was filed on April 2, 1892, in

vacation. The first day of the next term of court was May 23, 1892; and the exceptions were not filed until June 10, 1892, and on the seventh day of the session of the court. There is good reason why a party should not be compelled to anticipate that a referee to whom a case has been referred may file his report in vacation, and that objections should be required to be filed thereto, or within three days after it was in fact filed. But there appears to be no reason why parties should not be required to conform to the substantial requirements of the statute, and file their exceptions to such reports within three days after the opening of the term of court first following the time when the report is in fact filed. Such a holding works no injustice, is in conformity to the manifest requirements of the statutes, and tends to uniformity of practice. To obviate the objection made that the exceptions were not filed in time, appellant says she filed a supplemental report on the day these exceptions were filed, wherein she set out the fact that certain notes which the referee had charged to her were barred by the statute of limitations when they came into her possession, and were in fact worthless. It is claimed that this had the effect of reopening the report of the referee and the case, and hence the exceptions were in time. We do not think so. When this supplemental report was filed, the parties agreed that there should be deducted from the amount of the judgment recommended by the referee the amount of these notes, and the referee acceded to this. It can make no difference whether the referee acceded to it or not. When he filed his report, his connection with the matter ceased and he had no further power in the matter, unless by virtue of an order of the court, or an agreement of the parties. No such agreement was made, and no order was made by the court. The

report was not changed, but the court simply modified the referee's report to the extent indicated, and rendered judgment for the balance as recommended by him. Appellant's exceptions were filed prior to the time she filed her supplemental report. These facts had no effect upon the neglect of appellant to file her exceptions in time. Hence appellant has no exceptions to the findings of the referee, and the court did not err in striking them. With the record in this condition, appellant cannot be heard upon this appeal upon the merits of the case.—*Affirmed.*