JEWETT LUMBER COMPANY, Appellee, v. ANDERSON COAL COMPANY, Appellant.

EVIDENCE: Weight and Sufficiency—Inconsistency in Proof. No
1  privilege is extended to a defendant to be inconsistent in his proofs. So held where defendant practically admitted the correctness of an account, claimed he had paid it, yet contended that the account had not been proved.

PAYMENT: Requisites and Sufficiency—Authority to Receive—
2  Prima-Facie Proof. Prima-facie proof of authority in a supposed officer of a company to receive payments for the company is shown by the fact that the payments so received were properly turned over to, and accepted by, the company.

ASSIGNMENTS: Mode and Sufficiency—Oral Assignments. No
3  formality is required to make a valid oral assignment of an account.

APPEAL AND ERROR: Reservation of Grounds—Refusal of Ref-
4  eree to Grant Continuance—Failure to Except to Report. Objections to the refusal of a referee to grant a continuance must be made by exceptions to the report of the referee, and in the trial court, or such objection will be waived.

*Appeal from Polk District Court.*—W. H. MCHENRY, Judge.

NOVEMBER 26, 1917.

THIS is an action at law upon an account for lumber and cement. The defense was a general denial, plea of payment, plea of novation, plea of estoppel. The case was

heard in the first instance by a referee, who found for the
plaintiff for the full amount of its claim.    The report of
the referee was approved and confirmed in the district court,
and judgment entered accordingly.    The defendant appeals.
—*Modified and affirmed.*

  *Roy Cubbage,* for appellant.

  *Brammer, Lehmann & Seevers,* for appellee.

  EVANS, J.—The plaintiff corporation is a lumber dealer
in Des Moines.    The defendant corporation deals in coal
mining and jobbing.    Another corporation which figures
prominently in the evidence is the B. B. Lumber Company,
which was, at the time involved herein, a corporation en-
gaged in the wholesale lumber trade.    Practically all the
stock of the Anderson Coal Company was owned in one
family, known as the Evans Brothers.    The same stock-
holders, together with a brother-in-law, Miller, owned prac-
tically all the stock in the B. B. Lumber Company.    The
plaintiff sold lumber and cement at retail to the Anderson
Coal Company.    The B. B. Lumber Company sold lumber at
wholesale to the plaintiff company.    It is undisputed that,
in their previous dealings, there had been more or less
novation of accounts among these three corporations; that
is to say, the amount owing by the Anderson Coal Company
to the plaintiff on a given date was by agreement paid to
the B. B. Lumber Company, and credited to the plaintiff on
the account of the B. B. Lumber Company against it.    It is
the claim of the defendant that such an arrangement was
entered into and carried out as to the account here sued on.
This is denied by the plaintiff, and much of the evidence in
the record is directed to this issue of fact.    The defendant
introduced evidence tending to show that it had paid to the
B. B. Lumber Company the amounts necessary to extinguish
this account, and that this was done in pursuance of an ar-
rangement with Jewett, the president of the plaintiff com-

pany. The account sued on purports to have accrued between December 2, 1907, and October 7, 1908. The evidence for plaintiff tended to show that, on November 30 and December 4, 1907, it had a settlement with the B. B. Lumber Company, whereby the plaintiff was found to be indebted to such company for a balance of $366; that of such balance it paid, on December 4th, $150, and again $150 on December 9th; and that it never afterwards incurred any account with the said B. B. Lumber Company, and that it has never owed the said B. B. Lumber Company since said time any other sum than the balance of $66. This will indicate the general nature of the controversy made by the evidence, and the case is argued before us very largely upon its general merits.

I. As to the defense of general denial of the account, we have little occasion to deal with it. Miller, the chief witness of the defendant, admitted its substantial correctness, raising a question of doubt only as to two items, totalling less than $10. There was, therefore, no room for any other finding than that the account was proved. The proof offered by the defendant showed payments to the B. B. Lumber Company, purporting to be sufficient to pay the full amount of the account. This proof was of itself in the nature of an admission of the amount of the account. While the defendant may *plead* inconsistent defenses, no privileges of inconsistency are extended to it in its *proofs*. In the state of the record before us, therefore, the question of the competency of the books of the plaintiff, which has been argued somewhat, becomes quite immaterial, and we shall pass it by. It is enough to say that the amount of plaintiff's account was established by the practical admission of the defendant.

1. EVIDENCE: weight and sufficiency: inconsistency in proof.

II. The plea of payment made by the defendant was bottomed upon the claim that the payment had been made to the B. B. Lumber Company for the credit of the plaintiff company in pursuance of a mutual arrangement therefor. As already indicated, this is denied by the plaintiff company. In support of its denial at this point, the plaintiff company introduced evidence of an alleged settlement with the B. B. Lumber Company through its president, Bricker, whereby a balance was struck between them. As against this claim, the defendant shows that Bricker had ceased to be in the employ of the B. B. Lumber Company on September preceding, and he was in no manner thereafter authorized to represent them in a settlement. Jewett appears to have been in ignorance of the termination of Bricker's relations, and the question is argued whether it was incumbent upon the defendant to show that the plaintiff knew of the termination of Bricker's relation to the company. The B. B. Lumber Company is not a litigant. All the business it had ever done with the plaintiff was through Bricker. Checks were delivered by the plaintiff to Bricker in partial payment of the balance found due, and these appear to have passed through the regular channels of the B. B. Lumber Company. This, we think, was sufficient prima-facie proof of Bricker's authority. In any event, the issue is an incidental one only, and the fact is urged only as corroborative. It appears to be undisputed that the books of the B. B. Lumber Company, at the time of this alleged settlement, did show a larger account against the plaintiff than was agreed upon in the settlement. This is accounted for under the testimony for plaintiff by certain corrections agreed upon for overcharges and for duplications of charges. The contention of the plaintiff has corroboration in the fact that one of the checks relied upon by the defendant as having been paid, was dated October 28,

2. PAYMENT: requisites and sufficiency: authority to receive: prima-facie proof.

1907, which was prior to the accruing of any part of the account now sued on. The last check relied on by the defendant was dated January 7, 1908. On that date, less than $200 of the account sued on had accrued.

We cannot try the question of fact *de novo*. It is enough to say that the state of the evidence was such as to warrant a finding adverse to the plea of full payment.

3. ASSIGNMENTS: mode and sufficiency: oral assignments.

III. The most serious question we see in the case is why the defendant was not allowed credit for the $66 which was conceded by the plaintiff to be owing to the B. B. Lumber Company. Mr. Jewett testified for the plaintiff that, at the time of the settlement with Bricker, November 30 and December 4, 1907, there was an agreement for a novation of accounts to the extent of permitting the B. B. Lumber Company to take the accounts held by the plaintiff against the Anderson Coal Company and to credit the plaintiff therewith, and that this was accordingly done. Mr. Jewett testified as follows:

"At this time they said they would like to transfer the amount that was due us from the Anderson Coal Company, and that was done to the amount of $234.37 from the east side yard, and $162.39 from our west side yard. *That was the total amount that the Anderson Coal Company was owing us at that time.* So at their request we transferred that. They also said that they would be responsible for a collection which we had against the Nicholson Lumber Company of Ankeny for $234.52, and that they had a way in which they could collect it. So we credited Nicholson Lumber Company and charged the B. B. Lumber Company with that $234.52. This was on the 30th, but *we did not get through that day*, as they wished to consult some papers in their office. They came again on the 4th of December, and I then agreed on a balance. I gave them a check for $150. Our bookkeeper made them a statement

showing a balance due them of $216.20 at that time, and the accounts with the coal company were settled upon that date. A few days later, Mr. Bothne came, and I gave him a check for $150. That left $66.20 due the B. B. Lumber Company that they have never called for."

He also testified that the amount of the accounts specified in his testimony did not include any part of the account now sued on, his claim being that such account had not accrued. It appears also that the second payment of $150 made by the plaintiff upon the balance found against it was on December 9th. This payment still left a balance of $66 which has never been paid. The B. B. Lumber Company immediately went out of business. Indeed, it appears to have sold out to the plaintiff company. No explanation is offered of why this balance of $66 has remained unpaid. The present suit was brought one day before the expiration of the statute of limitations. On its face, the statute of limitations has run in favor of the plaintiff on the B. B. Lumber Company's account of $66. Jewett's testimony shows that, at the time of the settlement, it was intended to turn over to the B. B. Lumber Company *all* of the accounts held by the plaintiff against the Anderson Coal Company. The first five items in the account sued on are as follows: "1907

| Dec. 2, | 4 3x12-12 | 3.96 |
| 4, | 28 3x12-12 | 28.22 |
| 5, | 5 3x12-12 | 5.04 |
| 6, | 5 3x12-12 | 5.04 |
| 7, | 23 2x12-12 | 23.18" |

It will be observed, therefore, that, on December 9, 1907, when the plaintiff made the second payment of $150, this account now sued on had accrued approximately to the amount of $66, lacking only a few cents thereof. The turning of this account as far as it had accrued, was entirely consistent with the testimony of Jewett, who con-

cedes a novation as of the time of the settlement. The time of the settlement extended to December 9th, the date of plaintiff's final payment. The only reason given in the referee's report for a disallowance of that item was that the Anderson Coal Company had no *assignment* from the B. B. Lumber Company therefor. The novation was itself an assignment. And if the question of Jewett's consent to the novation were in doubt, the agreement is proved beyond dispute as between the Anderson Coal Company and the B. B. Lumber Company. No formality is required to make a good oral assignment. If proof of Jewett's consent were lacking, the agreement between the defendant and the B. B. Lumber Company was itself sufficient as an oral assignment. Furthermore, the fact that the plaintiff company took the benefit of the credit from the B. B. Lumber Company of $66 might well be urged as sufficient to sustain the plea of estoppel. We are satisfied that the record does not justify on any theory the disallowance of the item of $66 as a credit upon the account sued on, and as of the date thereof. To this extent there should be a modification of the judgment.

IV. The defendant complains of the refusal of the referee to grant it a continuance for the purpose of obtaining the testimony of Bricker as a witness. The claim is that it was taken by surprise by the testimony of Jewett as to the alleged settlement with Bricker. The defendant raised no such question in the district court in its exceptions to the report, and for that reason we cannot consider it here. Some other questions are discussed by counsel for appellant, which cannot be considered for the same reason. The ground upon which the appellant is permitted to stand on this appeal is quite narrow. We think it has no other legal ground of complaint than is herein considered. The judgment below will

4. APPEAL AND ERROR: reservation of grounds: refusal of referee to grant continuance: failure to except to report.

be modified in the respect indicated. In all other respects, the judgment is affirmed.

*Modified and affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.