HUGH M. HOGAN, Appellant, v. PERKINS BROS. COMPANY, Appellee.

No. 40989.

OCTOBER 27, 1931.

REHEARING DENIED FEBRUARY 10, 1932.

David F. Loepp, for appellant.

Henderson, Hatfield & Wadden, for appellee.

Morling, J.—The action was begun at law. On defendant's motion the cause was transferred to the equity calendar for trial. Plaintiff amended and moved to retransfer to law. His motion was overruled. The court ordered a reference. Plaintiff complains of these three rulings. He preserved, however, no exception to either. They are, therefore, not subject to review in this Court. Code, 1931, Sections 10949, 11537; Stork v. Stork, 202 Iowa 196, 197; Jewett Lumber Co. v. Anderson Coal Co., 181 Iowa 950.

II. The cause was tried to a referee who reported his findings to the court. The court referred the case back with instructions to the referee (1) to make a finding as to whether a list of "firms and names of persons attached to the contract" was furnished to defendants and made a part of the contract, and if so, (2) "to determine the total amount of the sales to the persons and firms in said list during the time of employment here in issue" and make supplemental report accordingly. The referee made such supplemental report finding that the list "was not submitted to defendant and made a part of the contract"; that the total sales for 1924 to the "persons and firms whose names appear in the list now attached to the contract, including personal sales for which he has been credited, amount to $59,833.64; that in case the court finds that said list was attached to said contract and was a part thereof and if the court finds the plaintiff is entitled to a commission on the total sales to the names in said list then" there would be a balance due plaintiff of $3,165.65 for 1924. The referee found further that the list had no application to any business prior to the time the written contract was entered into. The plaintiff thereupon filed exceptions "to the referee's supplemental report and findings of facts contained therein upon the following grounds: 1. * * * that the list of firms and names of persons attached to the contract, Exhibit 'A', was not submitted to the defendant and made

a part of the contract for the reason that said finding is contrary to the weight of the evidence. 2. Plaintiff excepts and objects to said finding for the reason that the contract specifically requires such a list under which parties dealt for a year, and the uncontradicted evidence shows that the plaintiff had this same list during all of said time and is entitled under the contract to a commission on all business sold to persons therein mentioned. The defendant was bound to demand the list if it had not been furnished and are at this late date estopped to deny that they received this list attached to the contract. They cannot take advantage of their own delinquency in failing to refer business from the customers on said list as required by the contract. 3. Plaintiff also excepts and objects to the referee's finding that the list of names attached to the contract, Exhibit 'A,' had no application to any business prior to January 1, 1924, for the reason that the contract expressly states that it is a confirmation of the oral agreement that preceded it, and the uncontradicted evidence shows that the list so attached to the contract were all customers that the plaintiff had been calling upon during the preceding two years.''

The court overruled these exceptions, approved the report and rendered judgment accordingly in favor of the plaintiff for $393.86.

■ Defendant contends that if the cause was properly transferred to equity it should be tried here de novo, citing Wilgus v. Gettings, 21 Iowa 177. See also Hubenthal v. Kennedy, 76 Iowa 707. The case, however, was tried in the lower court on plaintiff's exceptions and the appeal is from the judgment of the district court rendered on trial of those exceptions. Review here is limited to the exceptions which the appellant presented to the trial court, and to the record there made. In re Estate of Malvin, 93 Iowa 169; Code, 1931, Sections 11535, 11536, 11537, 11538; Albright v. Moeckley, 209 Iowa 1304; Jewett Lumber Co. v. Anderson Coal Co., 181 Iowa 950.

Plaintiff had been in the employ of the defendant as salesman under oral arrangement. Under date of January 22, 1924, a written contract was made by which plaintiff as second party agreed to re-enter the employ of defendant ''as its city salesman for a period of one year from the above specified date. * * * To make canvasses, solicitations, estimates and sales for the man-

ufacturing department of the party of the first part, which consists of the lithographing, commercial, printing, binding, photo engraving, stereotype, and stationery departments; to look after proofs of orders in the process of completion when necessary; to coöperate with the credit department in orders of questionable credit, and by every fair means to further the best interests of the party of the first part. Party of the second part further agrees to devote his best efforts and ability in securing business for the party of the first part, and to maintain his own automobile * * * to assist in the direction of prompt execution of orders during their completion so that business may be delivered on dates necessary. * * * In consideration of the above specified services, party of the first part agrees to pay to the party of the second part a salary of Thirty Dollars ($30.00) per week. Party of the second part further agrees to produce for the above specified salary a minimum of Twelve Hundred Dollars ($1200) of gross business monthly. On all business in excess of the above stipulated minimum, party of the first part agrees to pay to the party of the second part a commission of ten per cent of gross business, settlement monthly on the 5th day of the month following date the month's business is promptly executed and charged, at which time an itemized statement of second party's monthly sales will be rendered to him together with remittance check, if any. Form of statement similar to monthly statements companies in similar lines of business furnish to their salesmen. Copy to be submitted by second party.

"Party of the second part also agrees to submit to party of the first part a list of the business concerns he is now soliciting for business and which is a part of this agreement, and for the promotion of increased efficiency, it is agreed that all telephone calls and inquiries from these parties relative to business will be promptly referred to the party of the second part for his attention, and inasmuch as the efforts of the second party will produce some business from these parties which he will not personally write, it is agreed that this business will be awarded and credited to the party of the second part.

"It is agreed between the parties hereto that the department and clerical managers will co-operate with second party in procuring information, in making fair and honest estimates of potential orders when necessary, together with the prompt ex-

ecution of orders, and that the party of the second part will work diligently with all employes to further the best interests of the company and the greatest volume of business.

"The above agreement is a confirmation of a verbal understanding that has been in effect for the past two years."

Plaintiff received monthly statements and checks without questioning them until some months after the expiration of the contract when the present controversy arose.

Plaintiff claims to have had duplicate lists of customers upon whom he had been calling and one of these lists was attached by paper clip to his copy of the contract and another, by paper clip, to the copy taken by plaintiff's president, Sammons, who signed in plaintiff's behalf, and that he is entitled to commission on all sales to all persons and firms named in this list. Defendant claims that the list was not attached to the contract and was not a part of it. Owing to the inability of the parties to agree upon the abstract and amendments we have read the transcript. Plaintiff testifies that the duplicate contracts were prepared by his attorney and taken by him to defendant's president; that he did not see defendant's president sign; that Sammons went away and on his return plaintiff came into his office; that Sammons found the two contracts on his desk; that they had been signed by him; that Sammons handed them to plaintiff and plaintiff signed them.

"Q. And then you took these lists which were prepared in duplicate and fastened one of them, one of the lists, to your copy of the contract and fastened the other list to Mr. Sammons' copy of the contract, is that right? A. Yes, sir. Q. And you remember, don't you, fastening the list to the contract, you remember that? A. Surely. Q. Distinctly? A. And I took both contracts when I went into Mr. Sammons' office. Q. Did you run the 'Challenge' eyelet through them yourself? A. They were not attached this way, they were attached with these pins; I had the stenographer put these in in Mr. Loepp's office so that they might not get mislaid. Q. So that as a matter of fact the agreement or list was not in fact attached to the contract? A. (No answer). Q. Answer my question, was it yet fastened to the contract? A. Yes, sir. Q. With what? A. With a paper clip. Q. Is that the way you fasten contracts to-

gether? A. That is the way they were fastened, both of them. * * * It specifies the list right in the contract.''

Sammons testifies that plaintiff came to him and wanted him to sign the contract.

''I looked it over and saw no objection to it and signed it. Q. You saw then when you read it over that it referred to a list, did you not? A. I did. Q. You signed it then though you hadn't received a list? A. Well, the list was to be submitted subject to our approval and Mr. Hogan said he wanted protection, he says, 'Now, if I go and work up some man in order to get—to work on him in order to place an order for instance for lithographing I want protection so as I will get paid for my efforts, not have one of the other men come in and take that order away from me.' Q. You understood that at the time, did you not, that the contract— A. Yes, he claimed, you know, that some of these fellows would favor him. Q. And you consented to the contract and signed it with that very thing in view, did you not, you understood that is the reason the contract was drawn that way? A. It says right in the contract that he is to submit a list that he wanted protection on. * * * That is the explanation, so that when he had a customer that he had worked up and wanted protection, they was going to place an order or something of that kind, that one of the other men wouldn't go in and knock him out. * * * There was no list there, I signed the contract just as it reads, and we still stand by it.''

Further details would be of no value. The contract does not purport to have the list attached or to make the list a part of it, and as produced by defendant the list was not attached. The burden is on plaintiff.

The list is said to contain the names of 233 ''business houses and customers'' apparently about all defendant's Sioux City customers actual or prospective. The intention of the contract clearly was to pay commission on business found or produced by plaintiff. Plaintiff's contention that he was to receive a commission not merely upon business found by himself but upon all the city business of all the departments is upon this record fantastic. The evidence compels the finding of the referee and the approval thereof by the district court. This disposes of plain-

tiff's errors founded on the overruling of his first and second exceptions to the referee's supplemental report, and incidentally on the overruling of the third exception.

The third exception is to the finding that the list of names had no application to business prior to January 1, 1924, and is grounded on the statement in the exception that "the contract expressly states that it is a confirmation of the oral agreement that preceded it and the uncontradicted evidence shows that the list so attached to the contract were all customers that the plaintiff had been calling upon during the preceding two years." The clause in the contract reads: "The above agreement is a confirmation of a verbal agreement that has been in effect for the past two years." With respect to the list the contract is promissory as from January 22, 1924. Plaintiff "agrees to submit * * * a list." Such list was to be of "the business concerns he is now soliciting for business." It was agreed that "inquiries from these parties relative to business will be promptly referred to plaintiff" and as his efforts "will produce some business from these parties which he will not personally write * * * this business will be awarded and credited" to him. Plaintiff says that he first made arrangements with Sammons to work for defendant in the northwestern territory of Iowa about 1910; that he quit in 1919 and did not work for defendant again until December, 1921, when, according to plaintiff's testimony as set forth in his abstract, "it was agreed that I was to receive a drawing account or a salary, this drawing account being against the commission business under which I worked, that of 10% on the volume of business. * * * I agreed to write personally a minimum of $1,200 a month for that drawing account. * * * and all other business over $1,200 of all the other departments, I was to receive a commission."

Neither on the face of the contract nor on the evidence can it be held that such a list entered into any arrangement under which plaintiff was working prior to January 1, 1924. The court properly overruled plaintiff's third exception.

The arguments have taken a much wider range than the foregoing discussion, which however covers all questions properly before us for review.—Affirmed.

FAVILLE, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.